**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, ASSOCIATION OF AMERICAN MEDICAL COLLEGES, MERCY HEALTH MUSKEGON, CLALLAM COUNTY PUBLIC HOSPITAL NO. 2, d/b/a OLYMPIC MEDICAL CENTER, and YORK HOSPITAL, | ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-2841 |
| ALEX M. AZAR II, in his official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | |
| *Defendant*. | ) ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO ENFORCE JUDGMENT**

Plaintiffs in the case originally captioned Civil Action No. 1:18-cv-2841 respectfully

move for enforcement of this Court's vacatur order.  Dkt. 32.

On November 1, CMS made publicly available the Medicare hospital outpatient

prospective payment system (OPPS) final rule for calendar year (CY) 2020.  *See CY 2020*

*Medicare Hospital Outpatient Prospective Payment System and Ambulatory Surgical Center*

*Payment System Final Rule* (CMS-1717-FC) (the 2020 OPPS Final Rule).[1]  The 2020 OPPS

Final Rule purports to continue a "two-year phase-in" of the site neutral payment policy finalized

in the 2019 OPPS Final Rule, 83 Fed. Reg. 58,818 at 59,014 (Nov. 21, 2019)—a payment policy

---

[1] *Available at* https://www.govinfo.gov/content/pkg/FR-2019-11-12/pdf/2019-24138.pdf.  The
2020 OPPS Rule will be published in the Federal Register on November 12, 2019.

this Court vacated in September.  *See* Dkt. 32.  To be clear, CMS has not just issued another rule

that is unlawful for the same reasons as the 2019 OPPS Final Rule.  The agency has *reinstated*

the second year of the two-year phase-in that was promulgated—in the agency's own words,

"finalized"—in the now-vacated 2019 OPPS Final Rule.  That violates this Court's vacatur

order.

## FACTUAL BACKGROUND

**The 2019 OPPS Final Rule**

In July 2018, CMS issued a proposed rule proposing changes to OPPS for CY 2019,

titled *Changes to Hospital Outpatient Prospective Payment and Ambulatory Surgical Center*

*Payment Systems and Quality Reporting Programs* (the CY 2019 Proposed Rule).  As relevant

here, under the CY 2019 Proposed Rule, the Medicare payment rate for certain clinic-visit

services provided at excepted provider based departments (PBDs) would be reduced to render it

equal to the payment rate for services provided at *non*-excepted PBDs.  83 Fed. Reg. 37,046, at

37,142 (July 31, 2018).  CMS estimated that this change would result in a decrease in overall

payments to hospitals under the OPPS by $760 million in CY 2019 alone.  *Id.* at 37,143.

The 2019 OPPS Final Rule was published in the Federal Register on November 21, 2018.

83 Fed. Reg. 58,818 (Nov. 21, 2018).  Like the 2019 Proposed Rule, the 2019 Final Rule

adjusted the payment rate for services provided by excepted PBDs so that it was "equal to" the

payment rate for services provided by non-excepted PBDs.  *Id.* at 58,822, 59,013.  However, in

response to public comments, CMS announced that the payment reduction would now be phased

in over a two-year period.  Specifically, the agency noted:

> In response to public comments we have received, *we will be phasing in the*
> *application of the reduction in payment for HCPCS code G0463 in this setting*
> *over 2 years*.  In CY 2019, the payment reduction will be transitioned by applying

50 percent of the total reduction in payment that would apply if these departments were paid the site-specific PFS rate for the clinic visit service.

\*\*\*

Based on a *2-year phase-in of this policy,* half of the total 60-percent payment reduction, a 30-percent reduction, will apply in 2019. In other words, these departments will be paid approximately 70 percent of the OPPS rate (100 percent of the OPPS rate minus the 30-percent reduction that applies in CY 2019) for the clinic visit service in CY 2019.

In CY 2020, these departments will be paid the site-specific PFS rate for the clinic visit service.

\*\*\*

We note that by phasing in this policy over 2 years, the estimated savings associated with this policy will change. Considering the effects of estimated changes in enrollment, utilization, and case-mix, this policy results in an estimated CY 2019 savings of approximately $380 million, with approximately $300 million of the savings accruing to Medicare, and approximately $80 million saved by Medicare beneficiaries in the form of reduced copayments.

83 Fed. Reg. at 59,014.

**This Court Vacates The Unlawful 2019 OPPS Final Rule**

Shortly after publication of the 2019 OPPS Final Rule, Plaintiffs filed this lawsuit, challenging the agency's site neutral payment policy as ultra vires. Dkt. 1. The parties filed cross-motions for summary judgment. Dkt. 14, 20.

In September 2019, this Court issued a Memorandum Opinion finding the site neutral policy to be ultra vires because the agency lacked the statutory authority to implement non-budget-neutral changes to the clinic visit rates. Dkt. 31 at 26. In its associated Order, the Court vacated the site neutral portion of the 2019 OPPS Final Rule in its entirety and remanded to the agency for actions consistent with its decision. Dkt 32 (ordering that "the Secretary's Method to Control for Unnecessary Increases in the Volume of Outpatient Services, 83 Fed. Reg. 58,818, 59,004-15 (Nov. 21, 2018) (Section X.B), is VACATED").

The Government filed a motion to modify this Court's order and/or for a stay, arguing

that the rule should not be vacated pending its decision regarding whether to pursue an appeal.

Dkt. 33.  This Court denied that motion on October 21, 2019.  Dkt. 39.

**The Proposed 2020 OPPS Rule**

In August 2019, while the lawsuit was still pending, CMS issued its proposed OPPS rule

for CY 2020.  84 Fed. Reg. 39,398 (Aug. 9, 2019).  Rather than starting from scratch and

initiating an entirely new rulemaking on the site neutral issue, the agency simply announced that

it would be implementing the second year of the two-year phase-in promulgated in the 2019

OPPS Final Rule:

> In the CY 2019 OPPS/ASC final rule with comment period (83 FR 59004 through
> 59015), we adopted a method to control unnecessary increases in the volume of
> covered outpatient services under section 1833(t)(2)(F) of the Act by utilizing a
> Medicare Physician Fee Schedule (PFS)-equivalent payment rate for the hospital
> outpatient clinic visit (HCPCS code G0463) when it is furnished by excepted off-
> campus provider-based departments (PBDs).
>
> As discussed in Section X.D of this proposed rule[2] and the CY 2019 final rule
> (FR58818 through 59179), CY 2020 will be the second year of the 2-year
> transition of this policy, and in CY 2020, these departments will be paid the site-
> specific PFS rate for the clinic visit service.  For a full discussion of this policy,
> we refer readers to that final rule with comment period.

84 Fed. Reg. at 39,512-513.  The substantive discussion of the site neutral policy in the 2020

Proposed Rule is only half a page long, and it makes clear that the 2020 OPPS Proposed Rule

merely implements the two-year phase-in that was "finalized" in the 2019 OPPS Final Rule:

> In the CY 2019 OPPS/ASC final rule with comment period (83 FR 59004 through
> 59014), we adopted a method to control unnecessary increases in the volume of
> the clinic visit service furnished in excepted off-campus provider-based
> departments (PBDs) by removing the payment differential that drives the site-of-
> service decision and, as a result, unnecessarily increases service volume.  We
> refer readers to the CY 2019 OPPS/ASC final rule with comment period for a

---

[2]  The reference to "Section X.D" appears to be a typo; Section X.C is the relevant section of the
Proposed 2020 Rule that discusses the site neutral policy.

detailed discussion of the background, legislative provisions, and the changes in
payment policies we developed to address increases in the volume of covered
OPD services.  Below we discuss the specific policy we finalized in the CY 2019
OPPS/ASC final rule with comment period and its application under the OPPS for
CY 2020.

*Id.* at 39,528 (emphasis added).

The 2020 Proposed Rule went on to explain that, in the 2019 OPPS Final Rule, CMS had

"phased in the application of the reduction in payment for the clinic visit service described by

HCPCS code G0463 in the excepted provider-based department setting over 2 years."  *Id*.  The

agency also made clear that the CY 2020 rates had been established *in the 2019 OPPS Final*

*Rule* as part of the two-year phase-in:  "For CY 2020, the second year of the 2-year phase-in, we

stated that we would apply the total reduction in payment that is applied if these departments . . .

are paid the site-specific PFS rate for the clinic visit service described by HCPCs code G0463."

*Id.*; *see also* 83 Fed. Reg. at 59,014.  The agency also noted that the non-budget neutral nature of

the cuts in CY 2020 had also been decided in the 2019 OPPS Final Rule:  "In addition, as we

stated in the CY 2019 OPPS/ASC final rule with comment period (83 FR 59013), for CY 2020,

this policy will be implemented in a non-budget neutral manner."  *Id.*

**The 2020 OPPS Final Rule**

On November 1, 2019, CMS announced the 2020 OPPS Final Rule and published it on

its website.  Notwithstanding this Court's order, CMS stated in the 2020 OPPS Final Rule that it

was "continuing" the now-vacated payment policy "with the second year of the two-year

transition in CY 2020."  84 Fed. Reg. 61,142 at 61,365 (Nov. 12, 2019).[3]  The agency provided

the same explanation of the two-year phase-in it gave in the 2020 OPPS Proposed Rule, which

---

[3] Available at https://www.govinfo.gov/content/pkg/FR-2019-11-12/pdf/2019-24138.pdf.

made clear (yet again) that the clinic visit rates for 2020 were determined by the 2019 OPPS

Final Rule.  *Id.*  In describing the 2019 OPPS Final Rule, the agency stated:

> For CY 2020, the second year of the 2-year phase-in, we stated that we would
> apply the total reduction in payment that is applied if these departments
> (departments that bill the modifier ''PO'' on claims lines) are paid the site-
> specific PFS rate for the clinic visit service described by HCPCS code G0463.
> The PFS-equivalent rate for CY 2020 is 40 percent of the proposed OPPS
> payment (that is, 60 percent less than the proposed OPPS rate) for CY 2020.

*Id.*  The 2020 OPPS Final Rule also made abundantly clear that clinic visit rates for CY 2020

were in fact "adopted" in the 2019 OPPS Rule:  "Under this policy, *adopted in 2019*,

departments would be paid approximately 40 percent of the OPPS rate (100 percent of the OPPS

rate minus the 60-percent payment reduction that is applied in CY 2020) for the clinic visit

service in CY 2020."  *Id.* (emphasis added).  The agency also noted:  "as we stated in the 2019

OPPS/ASC final rule with comment period (83 FR 59013), for CY 2020, this policy will be

implemented in a non-budget neutral manner."  *Id.* at 61,365–366.

The agency acknowledged in passing this Court's order vacating the 2019 OPPS Final

Rule in relevant part, as well as its order denying reconsideration or a stay, but nonetheless

stated:  "We do not believe it is appropriate at this time to make a change to the second year of

the two-year phase-in of the [vacated] clinic visit policy.  The government has appeal rights, and

is still evaluating the rulings and considering, at the time of this writing, whether to appeal from

the final judgment."  *Id.* at 61,368.

On the same date that it announced the 2020 Final Rule, CMS also issued a press release

making clear that the 2020 clinic visit rates had been finalized in the 2019 OPPS Rule: "As

*finalized in last year's rule*, CMS is completing the two-year phase-in of the method to reduce

unnecessary utilization in outpatient services by addressing payments for clinic visits furnished in the off-campus hospital outpatient setting."[4]

## ARGUMENT

To succeed on a motion to enforce a judgment, the plaintiff must demonstrate that the defendant "has not complied with a judgment entered against it."  *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004), *aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24 (D.C. Cir. 2005).  A motion to enforce a judgment is the usual method for requesting that a court exercise its inherent authority to interpret its own judgment and compel compliance. *Id*.  A plaintiff must merely show that it has not "received all relief required by [the] prior judgment."  *Id*.  A court's exercise of this authority "is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

The CY 2020 OPPS rate reductions were not the product of a new, separate rulemaking espousing the same unlawful policy choices as the 2019 OPPS Rule.  They reflect the second year of a two-year "phase-in" that the agency itself has said was "finalized" in the now-vacated portion of the 2019 OPPS Final Rule.  The Court need not take our word for it; the agency itself has admitted as much—repeatedly.  In both the Proposed and Final 2020 OPPS Rule, as well as in its associated press release, CMS described the CY 2020 rate reductions as "adopted in 2019" and "finalized in 2019."  *See* 84 Fed. Reg. at 61,365; 84 Fed. Reg. at 39,512, *id*. at 39,528.

---

[4] *See* https://www.cms.gov/newsroom/fact-sheets/cy-2020-medicare-hospital-outpatient-prospective-payment-system-and-ambulatory-surgical-center-0.

The 2020 OPPS Final Rule thus merely reflected the phase-in of the site neutral policy that was established—and in the agency's own words, "finalized"—in the 2019 rulemaking.  The agency's conduct in persisting with the two-year phase-in rates "finalized" in the vacated 2019 OPPS Final Rule was a direct violation of the Court's September 2019 ruling.  When a court vacates an agency's annual rate rule, that rule plainly cannot determine subsequent years' rates.  *See, e.g.*, *St. Lawrence Seaway Pilots Ass'n v. United States Coast Guard*, 357 F. Supp. 3d 30, 38 (D.D.C. 2019).

Under the circumstances, it should not be a necessary predicate for hospitals to wait until the 2020 OPPS Final Rule goes into effect and go through presentment of claims under that rule before seeking judicial relief, as the Government argued in its recent filing in response to the Notice of Intention to File this motion.  *See* Dkt. 42.  Instead, this Court can and should find CMS in violation of its September 2019 Order for continuing forward with the CY 2020 rate reductions "finalized" in the 2019 OPPS Final Rule that was vacated.

Such circumstances do not arise often—but they do arise.  When this Court vacated a rule and remanded for further proceedings consistent with its opinion, the Department of Labor could not evade immediate judicial review in district court simply by promulgating a "new" rule that purported to undo the order's effect.  *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 921–923 (D.C. Cir. 1984). There, the case then "return[ed] to the court—under the same docket number and involving the same parties—on a motion to enforce the original mandate."  *Id*. at 922.  There, as here, the agency's rationale for the rule was found to "already ha[ve] been rejected by the court."  *Id*. at 923.  CMS's maneuver is a similarly transparent "attempt to circumvent a lawful order of this court."  *Id*.

- 9 -

Plaintiffs in the original lawsuit therefore respectfully request an order finding the CY

2020 reductions unlawful for the same reasons the CY 2019 reductions were unlawful, and

vacating the relevant portion of the 2020 OPPS Final Rule.

Respectfully submitted,

   /s/ Catherine E. Stetson
Catherine E. Stetson (D.C. Bar No. 453221)
Susan M. Cook (D.C. Bar No. 462978)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone:  (202) 637-5491
Fax: (202) 637-5910
cate.stetson@hoganlovells.com

*Counsel for the American Hospital Association, Association of American Medical Colleges, Mercy Health Muskegon, Clallam County Public Hospital No. 2, d/b/a  Olympic Medical Center, and York Hospital*

Dated:  November 11, 2019