IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE AMERICAN HOSPITAL ASSOCIATION, ASSOCIATION OF AMERICAN MEDICAL COLLEGES, MERCY HEALTH MUSKEGON, CLALLAM COUNTY PUBLIC HOSPITAL NO. 2, d/b/a OLYMPIC MEDICAL CENTER, and YORK HOSPITAL, | ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No. 1:18-cv-2841 |
| ALEX M. AZAR II, in his official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | |
| *Defendant*. | ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO ENFORCE JUDGMENT**

This Court previously vacated as *ultra vires* portions of a Final Rule governing hospital outpatient payment rates for Calendar Year (CY) 2019. The vacated portion of the Final Rule contemplated certain cuts to hospital payment rates that would be phased in over two years: the first in CY 2019, and the second in CY 2020. CMS moved to modify the Court's vacatur order, and its motion was denied. But CMS pressed ahead anyway, announcing its intention to "implement" in CY 2020 the second phase of the two-year cuts "finalized" in the vacated Final Rule. That is unlawful, and Plaintiffs need not wait until after they have begun to suffer under the second phase of cuts (which, again, were already declared unlawful) to obtain relief.

The Government offers two main arguments in its Opposition, one substantive and one procedural. On the merits, CMS argues that it "did not violate the judgment in this case through

its promulgation of the 2020 OPPS Rule." Gov. Opp. at 7.  Tellingly, *nowhere* does CMS try to explain how the same "method for controlling unnecessary volume increases" could be beyond the agency's delegated authority in 2019 but nevertheless lawful in 2020 without intervening congressional action.  *See* Gov. Opp. at 2 (conceding that "if Plaintiffs" were to challenge "the 2020 OPPS Rule, the Court may well find it to be *ultra vires* for the same reasons").

Perhaps cognizant that it has little defense on the merits, the Government turns to a procedural argument: that Plaintiffs must wait until the 2020 OPPS Rule takes effect and present claims under the "new" rule before challenging it here.  The Government cites the usual precedent for this proposition—*Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)—but that case did not involve an already-vacated rule that an agency sought to implement anyway.

Underlying each of these arguments is the Government's central premise: that the 2019 and 2020 OPPS Rules are "entirely different" rules, Gov. Opp. at 8.  But the two-year phase-in of the reduction to payments reflects a *single*—and already vacated—agency action.  That much is made clear by CMS's repeated statements during both the 2019 and 2020 rulemaking processes.  *See* 83 Fed. Reg. 58,818, 59,010 (Nov. 21, 2018) (announcing in 2019 OPPS Rule that CMS "will be implementing this policy with a 2-year phase-in" and projecting effect of the rule by including payment reductions in both years); 84 Fed. Reg. 61,142, 61,365 (Nov. 12, 2019) (acknowledging that the two-year policy was adopted in "the CY2019 OPPS/ASC final rule" and asserting that CMS is "continuing the policy with the second year of the two-year transition in CY 2020"); 84 Fed. Reg. 39,398, 39,512–513 (Aug. 9, 2019) (acknowledging "application" in CY 2020 of the "specific policy we finalized in the CY 2019 OPPS/ASC final rule" and reiterating that "CY 2020 will be the second year of the 2-year transition of this

policy"). Lest there be any doubt, in announcing the CY 2020 Final Rule, CMS pronounced: "As *finalized in last year's rule*, CMS is *completing the two-year phase-in* of the method to reduce unnecessary utilization in outpatient services by addressing payments for clinic visits furnished in the off-campus hospital outpatient setting."[1]

By the agency's own admission, the very same two-year phase-in of the payment reduction that CMS announced (in the agency's own words, "finalized") in the 2019 Rule is being "implemented" in the 2020 Rule. And it is not somehow outside this Court's order merely because it was always intended to be implemented in a two-year phase-in. *See Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 921–923 (D.C. Cir. 1984) (rejecting similar "attempt to circumvent a lawful order" by crafting a putatively "new" rule on remand). This Court vacated the entire site neutral portion of the 2019 OPPS Final Rule (Section X.B)—which included the two-year phase-in. Dkt. 32 (ordering that "the Secretary's Method to Control for Unnecessary Increases in the Volume of Outpatient Services, 83 Fed. Reg. 58,818, 59,004-15 (Nov. 21, 2018) (Section X.B), is VACATED"). There simply can be no argument that the second year of the phase-in was somehow exempt from vacatur. And CMS's conduct in continuing to implement that two-year phase-in does *not* reflect "proceedings consistent" with an Order holding that policy *ultra vires*. Dkt. 32.

Nor is CMS's recalcitrance an academic matter. Plaintiffs and their members should not be forced to wait until January (when the second year of rate reductions go into effect), suffer further harm under that further rate reduction, present their claims to the agency (again), await denials of those claims (again), file a post-presentment complaint (again), go through merits

---

[1] *See* https://www.cms.gov/newsroom/fact-sheets/cy-2020-medicare-hospital-outpatient-prospective-payment-system-and-ambulatory-surgical-center-0 (emphasis added).

3

briefing (again), and await a summary judgment decision by this Court (again) in order to obtain relief. Plaintiffs moved promptly to challenge the two-year reduction when it was announced, after dutifully presenting claims under the 2019 Rule announcing the two-year phase-in. It would be illogical in the extreme to require Plaintiffs to present claims yet again in order to challenge the second year of the phase-in that was "finalized" in the vacated 2019 Rule.

While hinting that it "*may* appeal the Court's decision," Gov. Opp. at 2 (emphasis added), following its unsuccessful request for reconsideration the Government has not yet filed a notice of appeal. Nor has the agency taken any other remedial measures of which Plaintiffs are aware. Indeed, CMS has not even changed its payment rates for CY *2019*, nor has it made hospitals whole for past underpayments. It would add insult to injury to force hospitals to suffer further rate cuts indefinitely into CY 2020 under phase two of a two-year reduction that was already declared unlawful. The Government's agreement to "expedite any new case challenging the 2020 rule," *id.*, is cold comfort; any rounds of additional pleading, briefing, and deliberation, even if "expedited," would provide CMS an excuse to refrain from complying with the law for many more months. And given that CMS *still* has not adjusted the payment rates for CY 2019 or made hospitals whole for past underpayments, hospitals should not be required to continue to suffer in the hopes that CMS might someday comply with the Court's mandate.

5

        Respectfully submitted,

         /s/  Catherine E. Stetson
        Catherine E. Stetson (D.C. Bar No. 453221)
        Susan M. Cook (D.C. Bar No. 462978)
        HOGAN LOVELLS US LLP
        555 Thirteenth Street, N.W.
        Washington, D.C. 20004
        Phone:  (202) 637-5491
        Fax: (202) 637-5910
        cate.stetson@hoganlovells.com

*Counsel for the American Hospital Association, Association of American Medical Colleges, Mercy Health Muskegon, Clallam County Public Hospital No. 2, d/b/a Olympic Medical Center, and York Hospital*

Dated:  December 5, 2019