UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN HOSPITAL ASSOCIATION, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-2841 (RMC) |
| ALEX M. AZAR II, Secretary of the Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

This Court has held that the Centers for Medicare & Medicaid Services (CMS) exceeded its statutory authority when it selectively reduced by Final Rule reimbursement rates for 2019 under the Outpatient Prospective Payment System (OPPS) to off-campus provider-based departments for certain outpatient department (OPD) services. *See Am. Hosp. Ass'n v. Azar*, No. 18-2841, 2019 WL 4451984, at *1 (D.D.C. Sept. 17, 2019) (*AHA I*); 83 Fed. Reg. 58,818 (Nov. 21, 2018) (2019 Final Rule). Specifically, the Court determined that the addition of a non-budget-neutral rate reduction for Evaluation and Management (E&M) services at such facilities—separate from the normal OPPS reimbursement schedule—conflicted with the overall statute. *AHA I*, 2019 WL 4451984, at *8-12. Accordingly, the Court vacated the relevant portions of the 2019 Final Rule, left intact the rest of the OPPS reimbursement schedule for 2019, and remanded the matter back to the agency for proceedings consistent with its decision. *Id.* at *12; Order [Dkt. 32].

For a short period thereafter, the Court left open whether this should be the final remedy. Indeed, CMS asked the Court to modify its order and remand the matter to the agency without vacatur so that the agency could develop a remedy in the first instance. Alternatively, CMS asked the Court to stay its order pending the agency's decision to appeal. After careful consideration of the parties' briefs, however, the Court determined that vacatur was appropriate and that a stay was not. *See Am. Hosp. Ass'n v. Azar*, No. 18-2841, 2019 WL 5328814 (D.D.C. Oct. 21, 2019) (*AHA II*). The Court entered final judgment on October 21, 2019, and the government had until December 20, 2019, to appeal.[1] *See* Fed. R. App. P. 4(a).

Notwithstanding the Court's decisions, on November 12, 2019, CMS finalized new OPPS reimbursement rates for 2020 which again reduced payments to off-campus provider-based departments for the same OPD services on the same *ultra vires* basis. 84 Fed. Reg. 61,142 (Nov. 12, 2019) (2020 Final Rule); *see also* 84 Fed. Reg. 39,398 (Aug. 9, 2019) (2020 Proposed Rule). Whereas the 2019 Final Rule explained at length the reasoning and mechanism by which CMS planned to cut reimbursement rates, *see* 2019 Final Rule at 59,004-15, the 2020 Final Rule was short, largely referring to the 2019 Final Rule for justification. *See* 2020 Final Rule at 61,365-69. Indeed, the 2020 Final Rule stated that it was a continuation of the "policy[] adopted in 2019" and that the rate cuts implemented "the second year of the 2-year phase-in" started by the 2019 Final Rule.[2] *Id.* at 61,365. Given the timing, the 2020 Final Rule acknowledged the

---

[1] The government filed notice of its appeal on December 12, 2019. Notice of Appeal [Dkt. 48]. Although this deprives the Court of jurisdiction over most matters in the case, the instant motion for relief was filed on November 11, 2019, prior to the appeal, and under Federal Rule of Civil Procedure 62.1 the Court retains authority to deny the motion, defer consideration, or state "that it would grant the motion" upon remand.

[2] The 2020 Final Rule is in fact more draconian than the 2019 Final Rule, because it implements the entire rate cut, essentially as if it were being implemented in one year. *See* 2020 Final Rule at 61,365.

Court's decisions in its response to comments but nevertheless persisted, stating merely that the government continued to believe in the merits of its legal position and that "the government has appeal rights, and is still evaluating the rulings and considering . . . whether to appeal." *Id.* at 61,368.

Plaintiffs now move to enforce the Court's September 17, 2019 Order against the 2020 Final Rule and strike it down before it is implemented. The government argues the Court lacks jurisdiction. The matter is ripe for review.[3]

## I. DISCUSSION

Judicial review of Medicare claims is tightly restricted by the statute. "First, 42 U.S.C. § 405(h) divests the district courts of federal-question jurisdiction 'on any claim arising under' Title II of the Social Security Act, and it bars any 'decision of the Commissioner of Social Security' from being judicially reviewed, 'except as herein provided' in other Title II provisions." *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018). Second, 42 U.S.C. § 405(g) provides an exception to this divestment of jurisdiction by permitting "any person to file a civil action, 'after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,' to 'obtain a review of such decision' in federal district court." *Id.* Third, 42 U.S.C. § 1395ii incorporates these channeling provisions against claims brought under Title XVIII of the Social Security Act, *i.e.*, against Medicare claims. *Id.*; *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7-9 (2000).

As interpreted by the Supreme Court, a plaintiff must thus satisfy two requirements before seeking judicial review under § 405(g). First, a plaintiff must "present"

---

[3] *See* Pls.' Mot. to Enforce J. [Dkt. 43]; Def.'s Opp'n to Pls.' Mot. to Enforce J. [Dkt. 45]; Reply in Supp. of Pls.' Mot. to Enforce J. [Dkt. 46].

their claim to the Secretary for a decision in the first instance. *Am. Hosp. Ass'n*, 895 F.3d at 825. "[T]his requirement is not waivable, because without presentment 'there can be no 'decision' of any type,' which § 405(g) clearly requires." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). Second, a plaintiff must exhaust all available administrative remedies. *Id.* at 826. Although this requirement is more demanding, it is also waivable. *Id.*

In *AHA I*, Plaintiffs properly presented their claims challenging the 2019 Final Rule to the Secretary, who rejected them. *AHA I*, 2019 WL 4451984, at *7. Plaintiffs did not exhaust their administrative remedies, but that requirement was waived by the Court. *Id.* at *8. This time, the government argues that Plaintiffs have not yet presented a claim challenging the 2020 Final Rule to the Secretary and that the Court lacks jurisdiction absent satisfaction of this nonwaivable requirement. Plaintiffs concede that they have not separately presented a claim challenging the 2020 Final Rule but argue that the 2020 Final Rule is merely a continuation of the 2019 Final Rule, such that a properly presented challenge to the latter is a challenge to the former. Disposition of this motion thus turns on the relationship between the 2019 Final Rule and the 2020 Final Rule. If CMS' decisions made in the 2019 Final Rule lay necessary groundwork for the establishment of reimbursement rates in 2020, without which the 2020 Final Rule cannot function, then a challenge to the 2019 Final Rule may impact those rates. But if the 2020 Final Rule independently set reimbursement rates for 2020, then Plaintiffs must challenge the 2020 Final Rule in addition to the 2019 Final Rule.

Although the 2020 Final Rule repeatedly refers to and relies on the reasoning of the 2019 Final Rule, the statutory scheme under which the 2020 Final Rule was promulgated makes clear that it alone, and not the 2019 Final Rule, sets reimbursement rates for 2020. As described in *AHA I*, the reimbursement rate for a given service is the product of its adjusted

relative payment weight and the OPPS conversion factor for that year, both of which must be set by CMS. *AHA I*, 2019 WL 4451984, at *1; 42 U.S.C. § 1395*l*(t)(3)(D). The 2020 Final Rule states that

> section 1833(t)(9)(A) of the Act requires the Secretary to review certain components of the OPPS *not less often than annually*, and to revise the groups, the relative payments, weights, and the wage and other adjustments that take into account changes in medical practices, change in technologies, and the addition of new services, new cost data, and other relevant information and factors.

2020 Final Rule at 61,144 (emphasis added); *see also* 42 U.S.C. § 1395*l*(t)(9)(A) (same). The 2020 Final Rule also states that

> Section 1833(t)(3)(C)(ii) of the Act requires the Secretary to update the conversion factor used to determine the payment rates under the OPPS *on an annual basis* by applying the OPD fee schedule increase factor.

2020 Final Rule at 61,182 (emphasis added); *see also* 42 U.S.C. § 1395*l*(t)(3)(C)(ii). In line with these directives, each year CMS reviews the OPPS system groups, relative payments weights, and adjustments; explains its thinking in a final rule for that year; and publishes addenda together with the final rule which include updated relative payment weights and OPPS payment rates for that year. *See* 2020 Final Rule at 61,154; *see generally* CMS, Addendum A and Addendum B Updates, https://tinyurl.com/qvgwd8o (last accessed Dec. 9, 2019). In short, regardless of the reimbursement rates CMS may have set in years prior, and whatever the basis for those rates, each year CMS must take new agency action to promulgate new reimbursement rates for the next calendar year.

This understanding of the operation of the 2020 Final Rule forecloses the Court's jurisdiction. Plaintiffs have not challenged the 2020 Final Rule "in the context of a specific administrative claim for payment." *Am. Hosp. Ass'n*, 895 F.3d at 826. They have not done so because the 2020 Final Rule has not yet gone into effect. "Therefore, they [have] neither

presented their claim nor obtained any administrative decision at all, much less the 'final decision' required under § 405(g)."[4] *Id.*

Plaintiffs argue that CMS should not be able to circumvent the Court's decision in *AHA I* merely by promulgating a new rule. To be sure, the judicial branch has an "interest . . . in seeing that an unambiguous [decision] is not blatantly disregarded by parties to a court proceeding," *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984), and the D.C. Circuit has made clear that agencies may not simply "reimplement[] precisely the same rule that this court vacated." *Id.* at 923. But as a technical matter, the government correctly argues that the Court's previous order was limited only to the 2019 Final Rule; it was so limited because, by function of the statute's channeling requirements, that was the only final agency action over which the Court had jurisdiction. *See* Order (vacating only relevant portions of the 2019 Final Rule). More specifically, although relying on the same reasoning,[5] CMS has not reimplemented "precisely the same rule"—the 2020 Final Rule affects only reimbursement rates for 2020, whereas the 2019 Final Rule affected only reimbursement rates for 2019. *Compare* 2019 Final Rule at 58,822 ("For *CY 2019*, we are increasing the payment rates under the OPPS by an outpatient department (OPD) fee schedule increase factor of 1.35 percent."), *with* 2020 Final Rule at 61,145 ("For *CY 2020*, we are increasing the payment

---

[4] Other Plaintiffs informed the Court that they intend to present a claim and bring legal action once the 2020 Final Rule goes into effect. Statement of the Univ. of Kansas Hosp. Auth. Pls. in Response to the Am. Hosp. Ass'n Pls.' Mot. to Enforce J. [Dkt. 44].

[5] Legally, CMS' reliance on the explanation contained in the 2019 Final Rule is a red herring. If CMS had instead provided *no* reasoning whatsoever when setting reimbursement rates, such that the 2020 Final Rule was clearly arbitrary and capricious, the Court would still lack jurisdiction at this time. As the D.C. Circuit has put it, "[t]he question presented here is not *whether* [Plaintiffs] may obtain review of their challenges to the new OPPS reimbursement regulation, but *when* and *how* they may do so." *Am. Hosp. Ass'n*, 895 F.3d at 825.

rates under the OPPS by an Outpatient Department (OPD) fee schedule increase factor of 2.6 percent.").

To be clear, CMS clearly disregarded the substance of the Court's decision in *AHA I* when it relied on the same *ultra vires* reasoning to justify its 2020 reimbursement rates. The government has appeal rights but the Court refused to modify or stay its Order pending appeal, and the government exhibited little urgency in filing its appeal, much less in moving for a stay from the D.C. Circuit.  Additionally, the government previously argued for a modification or stay so that it would have the opportunity to craft a prospective remedy in the first instance due to the administrative costs associated with a retroactive remedy.  CMS has now intentionally placed itself in a position to suffer those same alleged harms, which calls its argument into serious question and appears to set the agency above the law.

## II.  CONCLUSION

CMS set 2020 OPPS reimbursement rates using the same reasoning the Court found *ultra vires* when CMS set the 2019 OPPS reimbursement rates.  Notwithstanding, because this Court lacks jurisdiction, Plaintiffs' Motion to Enforce Judgment, Dkt. 43, will be denied.  A memorializing Order accompanies this Memorandum Opinion.


Date:  December 16, 2019

                                                        ROSEMARY M. COLLYER
                                                        United States District Judge